UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 19-mj-2210-MBB-11 |
| | ) | |
| KIMBERLY LOPES, | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S PROPOSAL OF RELEASE

Now comes Kimberly Lopes and hereby submits this proposal for release in advance of the status hearing scheduled for July 16, 2019 at 2:45pm.

The defendant's release plan ensures the safety of her grandchildren, the community, and herself.

### Ms. Lopes Will Live With her Mother in Hyannis

Though Ms. Lopes wishes to return to her home at 800 Bearses Way, Apt. 1NC in Hyannis, the Court has expressed concern about that arrangement.

The only reasonable alternative is to live with her mother, Bernice Gonsalves. Ms. Gonsalves lives on the first floor of a two-bedroom apartment at 825 West Main Street, Hyannis, MA. It is part of the Sea Captains Condominium complex. She lives alone. Ms. Lopes intends to sleep in the spare bedroom. Bernice Gonsalves is seventy-five (75) years old, born 10-12-43. She and Ms. Lopes enjoy a close mother/daughter relationship. The distance between Ms. Gonsalves' apartment and 800 Bearses Way is 2.8 miles, approximately eight (8) minutes by car.

During the investigation that led to Ms. Lopes' arrest, it was revealed that Edwin Otero occupied his grandmother's home on a few occasions, and sold drugs from the parking lot. *See* D.23 "Affidavit" by Special Agent Ryan J. Rapaszky, paragraphs 64-67 and 85-88, submitted as Government's Exhibit 1 at the detention hearing. Ms. Lopes did not participate in these transactions. A post-arrest search of

the home revealed a firearm hidden underneath the outside front porch, not in the home. Ms. Gonsalves is not accused of participating in the drug conspiracy. The fact that Mr. Otero conducted drug business at his grandmother's home is irrelevant to whether it is a safe and secure environment for Ms. Lopes.

### Threat of Children's Exposure to Drugs No Longer Exists

With Edwin Otero incarcerated, the threat of the children becoming exposed to illegal drugs has evaporated. According to the evidence provided thus far, the presence of illegal drugs at Ms. Lopes' home can be directly attributed to Edwin Otero. But for Mr. Otero's operation, there would be no illegal substances in the home. Ms. Lopes did not act independently of Mr. Otero. *See* generally, D.23 "Affidavit." In addition, there is no evidence that Ms. Lopes used or uses illegal drugs.

### Ms. Lopes' Grandchildren

Ms. Lopes wishes to be able to care for and interact with her grandchildren. She proposes a schedule, subject to modification, where she can spend several hours each day at 800 Bearses Way. Ideally, she would come to the home during the day so that she can watch and care for her grandson, Edwin, Jr. who requires distinct and sustained supervision, due to his Type-1 Diabetes, *see* D.32, defendant's Exhibit A, "Medical Records."

Allowing her to visit and care for the grandchildren alleviates the stress and burden on her daughters. It also provides continuity to the children who have been negatively impacted by the recent upheaval. Ms. Lopes is not only the childrens' guardian, she is their primary caregiver and provider of love and emotional support.

### Department of Children and Families (DCF) Investigation and Possible "Care and Protection" Proceedings

Due to its role as a "mandatory reporter," the Barnstable Police reported the children to DCF, under G.L.c. 119, §51A. Now, as required by law, DCF has begun an investigation into the "suspected…abuse or neglect," G.L.c. 119, §51B. Under the

statute, following the investigation, DCF "shall… provide a written evaluation of the household of the child, including the parents and home environment and make a written determination relative to the safety of and risk posed to the child and whether the suspected child abuse or neglect is substantiated." It was reported to this Court that DCF will likely finish its investigation in August, 2019.

A brief overview of the law is appropriate – the Massachusetts Juvenile Court has exclusive jurisdiction to "remove" a child or children from the custody of a legal guardian, *see generally*, Massachusetts General Laws Chapter 119. Removal cases are commonly known as "Care and Protection" proceedings, or "C&Ps." They begin with the filing of a "petition for removal." A child cannot be removed from a home without a final "order of removal" from the Juvenile Court, under G.L.c. 119, §24. On the other hand, decisions as to "guardianship" and "custody" lie exclusively with the Probate and Family Court. The Massachusetts Probate and Family Court does not have the power to "remove" a child from a home.

Up until her arrest, Ms. Lopes had full custody of Edwin Otero's three children – Layla (age 10), Edwin, Jr. (age 5), and Alante (Age 4). Temporary custody of the three children now lies with her daughter, Tiana. *See* Attachments A, B, and C, "Order[s] Appointing Temporary Guardian of a Minor," dockets BA16P1004-6GD. The orders expire on December 27, 2019.

Care and Protection proceedings have not begun, and it is not likely that they will; because, typically, a removal petition is filed contemporaneously with the "51A report". No removal has been filed.

## Third-Party Custodian

Ms. Lopes' daughter, Talease Lopes (Talease) [1], plans to act as third-party custodian, under 18 U.S.C. § 3142(c)(1)(B)(i). She "agrees to assume supervision and to report any violation of a release condition to the court, … is able reasonably to assure the [Court] that Kimberly Lopes will not pose a danger to the safety of any other person or the community." Talease was interviewed by probation officer Erin

---

[1] Tiana and Talease are fraternal twins.

Henneman on July 8, 2019. She has no criminal record, has attended each of her mother's court dates, and holds a steady job. Talease lives at 800 Bearses Way, Apt. 1NC with her sister and Ms. Lopes' grandchildren.

To care for the children, particularly Edwin, Jr., Tiana quit her job as home caregiver for elderly and infirm people. Now, the family is without Tiana's income, putting more financial stress on an already tenuous economic situation.

## Conclusion

Allowing Kimberly Lopes to stay at her mother's home and see the children during the day would accomplish the following: the grandchildren could regain the stability provided by their grandmother's presence, Tiana could return to work, and Ms. Lopes could reclaim her liberty. Meanwhile, the safety of the community, the children, and Ms. Lopes can be ensured with conditions that would require her to check-in with the probation department, preferably by phone, and any other conditions the Court sees fit.

                                                                   Respectfully submitted,
                                                                   KIMBERLY LOPES,
                                                                   By her attorney,

Date:  July 15, 2019

                                                                   */s/Henry Fasoldt*
                                                                  C. Henry Fasoldt (BBO# 667422)
                                                                  185 Devonshire Street
                                                                   Suite 302
                                                                 Boston, MA 02110
                                                                henry@bostondefenselaw.com

## CERTIFICATE OF SERVICE

I hereby certify that this document was served by electronic delivery on AUSAs Chris Pohl and Lauren Graber on July 12, 2019.

                                                                  /s/ Henry Fasoldt
                                                                  Henry Fasoldt