UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KIMBERLY LOPES<br><br>Defendant | CRIMINAL No. 19-10245-ADB |

**GOVERNMENT'S COMBINED MOTIONS IN LIMINE**

The United States of America, by and through undersigned counsel, respectfully moves this Court (1) to preclude any reference in the presence of the jury to potential punishment, and (2) to allow government law enforcement witnesses to offer lay opinion testimony based on their experience and training.

**I.     Unopposed Motion to Preclude Reference to Punishment**

The government moves to preclude, as irrelevant and prejudicial, any reference by the defendant to her potential sentence during all phases of the trial (including jury selection, opening statements, examination of witnesses, including the defendant if she elects to testify, and summation). That reference could be as overt as, "You understand I am facing up to twenty years in prison," or more subtle such as, "I am facing a lot of time," "this case has serious consequences for me," "my liberty is at stake in this trial," or "your decision will have consequences for a long time to come." Once the jury hears anything about punishment, the bell simply cannot be un-rung or the damage neutralized by a curative instruction.

"It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992); *see also Shannon v. United States*, 512 U.S. 573, 579 (1994) ("[P]roviding jurors sentencing information

invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion"); *Rogers v. United States*, 422 U.S. 35, 40 (1975) (explaining that jury should have been admonished that it "had no sentencing function and should reach its verdict without regard to what sentence might be imposed"). Therefore, the defendant should be precluded from making any reference in the presence of the jury to punishment in statements, questions, or argument.

The government has conferred with counsel for Defendant, who does not oppose this Motion.

## II. Motion to Allow Lay Opinion Testimony from Law Enforcement Witnesses

The government will seek to introduce lay opinion testimony from one or more law enforcement officers regarding the tools used in drug packaging and distribution, typical business practices in drug distribution (including the "fronting" of drugs for repayment at a later date), prices of heroin, and generally the fact that drug dealers typically speak in coded language when conducting their drug business. The government will also seek to introduce lay opinion testimony from agents as to the particular coded language used by Edwin Otero during the course of the charged conspiracy.

The government intends to introduce this testimony as lay opinion testimony under Federal Rule of Evidence 701. Under the rule, a non-expert witness may testify in the form of opinion if the testimony is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701; *see also United States v. Albertelli*, 687 F.3d 439, 446-47 (1st Cir. 2012) (lay opinion must be based on the witness's perception, potentially helpful to the jury, and not based on expert

2

knowledge). "[T]he touchstone for the admissibility under Rule 701 of such lay-opinion testimony is whether the testimony has the 'potential to help the jury.'" *United States v. Spencer*, 873 F.3d 1, 14 (1st Cir. 2017) (quoting *Albertelli*, 687 F.3d at 447). "Helpful testimony is typically based on the lay expertise a witness personally acquires through experience, often on the job." *Spencer*, 873 F3.d at 14 (internal quotation marks and citations omitted).

Courts regularly permit law enforcement testimony about various matters within their extensive experience as lay witness opinion testimony under Rule 701. Such testimony often concerns the modus operandi of drug traffickers. *United States v. Moon*, 802 F.3d 135, 147–48 (1st Cir. 2015) (permitting officer's testimony that drugs appeared to be heroin and crack cocaine and that drug dealers often possess firearms was properly admitted under Rule 701); *Spencer*, 873 F.3d at 13–14 (permitting officers' testimony that defendants' patterns of conduct and speech were, on the basis of their experience, believed to be typical of those working together as a team in selling drugs); *United States v. Valdivia*, 680 F.3d 33, 50–51 (1st Cir. 2012) (permitting officer's testimony that drug traffickers frequently put their phones in fictitious names).

"A police officer noticing patterns of behavior across criminal operations uses straightforward logic to conclude a defendant's behavior fits within that pattern and thus, does not need to be qualified as an expert." *United States v. Vega*, 813 F.3d 386, 394 (1st Cir. 2016). Testimony by a law enforcement agent about the tools of the drug trade, typical methods and means of drug dealing, and the prices of drugs are all admissible as lay testimony. *See United States v. Maher*, 454 F.3d 13, 24 (1st Cir. 2006) (holding that an officer's testimony that, based on his experience, certain post-it notes were likely drug orders and the number "4" likely referred to a quantity of drug found by law enforcement "did not cross the line to become expert testimony"); *United States v. Ayala–Pizarro*, 407 F.3d 25, 29 (1st Cir. 2005) (holding that an

3

officer's testimony that heroin seized at drug points was typically packed in aluminum decks and that the heroin seized in the case was packaged in such decks was Rule 701 testimony).

Here, the anticipated law enforcement testimony regarding the tools used in drug packaging and distribution, typical business practices in drug distribution, prices of heroin, and the fact that drug dealers generally speak in coded language, will certainly assist the trier of fact to determine facts at issue in the case. A typical juror is unlikely to be familiar with these topics and practices. The proposed law enforcement testimony is necessary to provide the jury with a thorough understanding of the significance of the intercepted communications and the items seized from defendant's residence.

Additionally, the jury will be assisted by the agents' testimony regarding specific coded language used by Edwin Otero throughout the investigation. Investigators received court authorization to intercept two months' worth of conversations over Otero's cellular telephones. During the course of the wiretap, investigators intercepted and listened to thousands of calls between Otero and his co-conspirators as they discussed the everyday operation of their drug business. Through this personal experience with Otero's conversations, the case agents became familiar with the particularized slang used by Otero's crew, including their regular use of music-themed terms to refer to contraband. For example, as set forth in the criminal complaint:

- Otero asked co-defendant Justin Joseph, "Want me to bring a little bit of **music** so you could get it jumping for us?" Dkt 3-1, p. 15;

- Otero told Joseph, "I got like another crazy **mix tape**, but it looks way better bro. It's like an optical illusion type situation, ya know?" Joseph responded, "Yea, I don't care. Do whatever the niggas sell bro." *Id.*;

- Otero told Krymeii Fray, "…I need all my **music** bro I got to [sic] much shit out and ppl that need more…" *Id.* at 17; and

- Otero told Anthony Basilici, following the shooting that occurred in this case, "I know but listen when you threw the other **CD** out with more tracks on it…the bigger **CD**, right, that shit wasn't in that thing bro." *Id.* at 38.

4

Based on the totality of the investigation, and the numerous intercepted communications, investigators now understand that Otero used these music-related terms to refer to various types of contraband, sometime using terms interchangeably.  For example, in the above examples, agents believe Otero referred to drugs as "music" and a "mixtape," while also referring to a gun as a "CD" and the additional rounds within the firearm as "more tracks."  Agents were able to decode Otero's language through a combination of the interceptions, surveillance, and drug seizures.  Agent testimony about Otero's particular drug code will therefore be based on their perceptions, as well knowledge gained through their personal involvement in the investigation into Otero's crew. Agent testimony as to Otero's particular coded language will also be useful to jurors as they decipher Otero's intercepted communications with his mother, Lopes.  *See United States v. Santiago*, 560 F.3d 62, 66 (1st Cir. 2009) (affirming admission of lay opinion testimony as to coded language because witness "had been involved in the investigation, listened to over 90 percent of the intercepts, learned voices and patterns, and heard and used the coded language in his undercover drug buys relating to the investigation).

The officers and agents who will offer this testimony are experienced law enforcement officers with many years' experience investigating narcotics offenses, as will be established during their testimony at trial.  They were also extensively involved in the investigation of Otero's crew, and listened to thousands of Otero's drug conversations.  They will, therefore, be qualified to offer their lay opinions based on their experience and training.  *See United States v. Garcia-Morales*, 382 F.3d 12, 19 (1st Cir. 2004) (finding an officer who had served a total of four years as a law enforcement agent and who had participated in between 20 to 40 narcotic investigations and 40 to 60 drug seizures to be qualified to offer an opinion on the structure and operation of a typical drug conspiracy); *see also United States v. Reynoso*, 336 F.3d 46, 49 (1st Cir. 2003) ("Due to her DEA

experience, Agent Kelleher was competent to testify to the relative raw-weight distinctions in the drug quantities typically possessed by users as distinguished from dealers."). Because this testimony meets the criteria of Rule 701 and these witnesses are competent to offer their lay opinions as experienced law enforcement officers involved in this case, this Court should allow this testimony.

| | |
|---|---|
| Dated: February 7, 2022 | Respectfully submitted,<br>RACHAEL S. ROLLINS<br>United States Attorney |
| | By: */s/ Lauren A. Graber*<br>CHRISTOPHER POHL<br>LAUREN A. GRABER<br>Assistant United States Attorneys |

## CERTIFICATE OF SERVICE

I, Lauren A. Graber, Assistant U.S. Attorney, hereby certify that the foregoing was sent to all registered counsel via ECF filing on February 7, 2022

*/s/ Lauren A. Graber*
LAUREN A. GRABER
Assistant United States Attorney